# MOUTONDELL'ANNO LLP

**Gregory P. Mouton, Jr.**, Partner

+1 646 706 7481 (t)
+1 646 706 7481 (f)
gmouton@moutondellanno.com

September 29, 2017

Hon. Robert M. Levy
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Via ECF

Re:   <u>Jocelyne Avril v. Rishavena, Inc., et al.</u>, 17 CV 116 (ILG) (RML)

Your Honor,

My office represents Plaintiff Jocelyne Avril in the above-entitled action. In that capacity, I write to submit the parties' joint fairness letter respectfully requesting that the Court approve the settlement of this action.[1]

## I.     BACKGROUND

### a.     *Summary of the Allegations and Legal Contentions as set forth by Plaintiff Jocelyne Avril*

Ms. Avril commenced the instant action with the filing of her Complaint on January 9, 2017, which was superseded by the filing of her First Amended Complaint ("FAC") on May 13, 2017, alleging, *inter alia*, that the Defendants failed to pay her overtime wages and took illegal deductions from her wages. *See, generally* FAC, Docket Entry No. 19; Declaration of Jocelyne Avril dated March 30, 2017 ("Avril Decl."), Docket Entry No. 24.

Ms. Avril began working for Defendants as a Home Health Aide in or about August 2014. FAC at ¶ 23; Avril Decl. at ¶ 4. Ms. Avril alleged that her job duties included reporting to clients that were assigned to her from time to time by Defendants to provide these clients with personal services such as housekeeping and laundry services; shopping for food and other household requirement; preparing and serving meals and snacks; running errands; and providing personal services such as bathing, dressing, grooming. FAC at ¶ 24; Avril Decl. at ¶ 5. Ms. Avril contended that, from the time of hire, she worked eleven (11) hours a day seven (7) days each week; was paid Ten Dollars and Ninety-Three Cents ($10.93) per hour; and had a workweek that was set from Saturday to Friday. FAC at ¶¶ 29, 30, & 32; Avril Decl. at ¶¶ 7, 8, & 10. Ms. Avril's rate of pay increased to Twelve Dollars and Forty Cents ($12.40) on or about January 1, 2016. FAC at ¶ 31; Avril Decl. at ¶ 9.

---

[1] A copy of the executed settlement agreement is annexed hereto as Exhibit 1.

Ms. Avril asserted that she was regularly denied overtime pay for overtime hours she worked for Defendants. FAC at ¶ 33; Avril Decl. at ¶ 11. She also alleged that illegal deductions were taken from her pay. FAC at ¶ 34; Avril Decl. at ¶ 12.

Ms. Avril's employment with Defendants ended in October 28, 2016. Ms. Avril alleged that she was terminated by Defendants in retaliation for complaining about illegal deductions being taken from her paycheck. FAC at ¶ 39; Avril Decl. at ¶ 4.

**b.**     ***Summary of the Defenses and Legal Contentions as set forth by Defendants***

The Defendants have consistently denied, and continue to deny, all of Ms. Avril's substantive allegations. The Defendants answered Ms. Avril's First Amended Complaint on May 30, 2017, through which they denied Ms. Avril's allegations and asserted several affirmative defenses. Dkt. No. 21.

Among other defenses, the Defendants contended that Ms. Avril was exempt from overtime requirements under the "companionship exemption" of the Fair Labor Standards Act (the "FLSA"). *See* 29 U.S.C. § 213(a)(15); Dkt. 21 at ¶ 112; Dkt. No. 26 at 12-15. As a result, Ms. Avril was not entitled to overtime. The Defendants also strenuously denied improperly "removing" or "deducting" any hours from Ms. Avril's pay.

Finally, the Defendants denied retaliating against Ms. Avril. The Defendants asserted that Ms. Avril was terminated because of improper workplace conduct that was entirely unrelated to any alleged complaints.

**II.     STANDARD OF REVIEW**

Under the FLSA, parties cannot settle claims without the approval of a district court or the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Court may approve the settlement where it finds the agreement is "fair and reasonable." *See Flores v. Food Express Rego Park, Inc.*, No. 15 CV 1410 (KAM), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). As set forth herein, the Court should approve the instant settlement agreement as it is a fair and reasonable settlement that was the result of arms-length mediation with a neutral mediator, and constitutes a fair compromise of a bona fide dispute over the claims in this matter. *See Zhang v. Joy's Hair Studio, Inc.*, No. 13 CV 3220 (RRM) (RML) at * 1 (E.D.N.Y. June 21, 2016).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiffs range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

### III. THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT BECAUSE ITS TERMS ARE FAIR AND REASONABLE

#### a. *Assessment of the alleged damages and the bona fide dispute between the parties relative to Plaintiff's claims*

Ms. Avril alleged that, if she succeeded on liability, damages would be calculated as follows:

| Claim | Damages |
| --- | --- |
| Overtime Wages and Illegal Deductions | $72,976.88 |
| Time of Hire Wage Notice | $5,000.00 |
| Paystub Requirement | $5,000.00 |
| Retaliation | $46,859.60 in back pay, $50,000.00 for emotional distress, liquidated damages in the amount of $46,859.60, and $50,000.00 in punitive damages |
| Total: | $276,696.08 |

However, Ms. Avril was aware that some of her alleged damages would be reduced upon the exchange of further discovery. Ms. Avril's valuation of her overtime and illegal deductions claims were based on only the documents she had in her possession. Ms. Avril recognized that, once discovery was exchanged, her claims, if successful on the merits, could have been worth significantly less based on the information provided in the paystubs.

As noted above, the Defendants believe that Ms. Avril faced a serious risk of losing on liability — a result which could lead to no recovery at all. The Defendants assert that if Ms. Avril did succeed on some, or even all, of her claims, damages, if any, would at best be minimal, and far less than what Ms. Avril initially estimated (which is restated above). The Defendants contend, among other things, that Ms. Avril was exempt from overtime requirements under the companionship exemption of the FLSA and that she was therefore not entitled to any overtime pay while the exemption applied. They also were prepared to offer evidence that no hours were improperly "removed" or "deducted" from her pay. Ms. Avril alleged that her time-of-hire wage notice failed to comply with certain legal requirements because it was provided in English and not translated into Creole, but the Defendants planned to offer evidence that Ms. Avril spoke and read English. Ms. Avril alleged that her pay statements failed to comply with certain legal requirements, but the Defendants planned to offer such pay statements into evidence to establish that they contained all compensation information required by law.

The Defendants deny retaliating against Ms. Avril, and they intended to offer evidence that Ms. Avril was terminated for legitimate purposes that had nothing to do with any alleged complaint. While Plaintiff maintains that the evidence in this matter establishes a strong retaliation claim, there was inherent risk involved in litigating these claims because a trier of fact could have found no retaliation and awarded no recovery or awarded Ms. Avril substantially less than what she sought. Ms. Avril's retaliation claim involved hotly contested factual issues, and the outcome of her retaliation

claim was therefore very difficult to predict. Accordingly, the Defendants viewed her retaliation claim as the only claim with any meaningful value, and as a result, the vast majority of the funds from this settlement are allocated to the retaliation claim, and thus, settlement recovery on this claim is significant.

c.  **The litigation risks faced by the parties**

The parties recognize the risks of continuing litigation in this matter. On Ms. Avril's claims, the Defendants face the risk of having to pay Plaintiff's damages, costs, and attorneys' fees. Ms. Avril faces the risk of failing to prove her case on the merits or, if successful, recovering only a small portion of the damages alleged. Settlement on the terms contained in the Settlement Agreement avoids further burdens and expenses for both sides, and it acknowledges the risks of continued litigation and the disputed nature of the Parties' claims and defenses.

Finally, the Defendants have maintained that they have an inability to pay. Thus, even if Ms. Avril did succeed on liability and obtain a damages award and judgment, collection presented serious risks.

d.  **The settlement agreement is the product of arm's length bargaining**

The settlement is fair and reasonable given that it was the result of arms-length mediation with a neutral mediator, and constitutes a fair compromise of a bona fide dispute over the claims in this matter. *See Zhang v. Joy's Hair Studio, Inc.*, No. 13 CV 3220 (RRM) (RML) at * 1 (E.D.N.Y. June 21, 2016)

e.  **There is no possibility of fraud or collusion**

Because the settlement was reached through arms-length mediation with a neutral mediator, there is no risk or possibility of fraud or collusion in settling this matter on the terms set forth in the Settlement Agreement.

f.  **Attorneys' fees in the amount of one-third of the recovery are reasonable**

The attorneys' fees provision of one-third of the settlement fund in the prosecution of the action is reasonable. While § 29 U.S.C. 216(b) provides for fee-shifting if the Plaintiffs are the prevailing party, contingency fee agreements are common and are routinely approved in the Second Circuit in FLSA cases, as the Plaintiffs' counsel assumes all of the risk in pursuing these cases. "[O]ne-third of the total award is the customary contingency percentage in FLSA cases." *Garcia v. Atlantico Bakery Corp.*, 2016 U.S. Dist. LEXIS 84631, at *2 (S.D.N.Y. June 29, 2016) (citing *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (characterizing one-third as "standard contingency-fee level[]" in FLSA case); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with 'contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, No. 13 CV 1767, 2015 U.S. Dist. LEXIS 71877, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)))).

## IV.     CONCLUSION

Given the foregoing, it is respectfully requested that the Court approve the settlement agreement annexed hereto as Exhibit 1.

Sincerely,

/s/
Gregory P. Mouton, Jr., Esq.

cc:

Peter C. Godfrey, Esq. (via ECF)
Hodgson Russ LLP
*Attorneys for Defendants*
140 Pearl Street, Suite 100
Buffalo, NY  14202